UNITED STATES COURT
EASTERN DISTRICT OF NEW YORK

KINSALE INSURANCE COMPANY, )
 )
     Plaintiff, )  No. 19-_____
 )
 -against- )
 )
B GREEN CONSTRUCTION CORP, )
 )
     Defendants. )

## COMPLAINT FOR RESCISSION AND DECLARATORY RELIEF

1. Plaintiff KINSALE INSURANCE COMPANY ("KINSALE"), by and through its attorneys, WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, for its complaint against Defendant B GREEN CONSTRUCTION CORP ("B GREEN" or "Defendant"), states as follows:

## INTRODUCTION

2. This declaratory judgment action involves an insurance coverage dispute arising from a commercial general liability insurance policy issued by KINSALE to B GREEN, as the named insured (hereafter the "KINSALE Policy"). A threshold issue in controversy is whether the KINSALE Policy is void *ab inito* because KINSALE was wrongfully induced to issue the KINSALE Policy because of material misrepresentations and omissions in the inducement by B GREEN and/or its authorized agents and representatives. A true copy of the KINSALE Policy, the terms of which are incorporated by reference herein, is attached as **Exhibit "A"**.

3. Alternatively, KINSALE seeks a judgment, under 28 U.S.C. §2201 that it has no duty to defend or indemnify B GREEN under the terms of the KINSALE Policy in connection a claim resulting from a slip and fall accident which allegedly occurred on a sidewalk outside the premises located at 14-22 Astoria Boulevard.

## JURISDICTION AND VENUE

4. The action is currently ripe for adjudication, as an actual controversy exists between the parties regarding coverage under the Policy.

5. The Jurisdiction of this Court is premised upon 28 U.S.C. § 1332. As there is complete diversity of citizenship between the parties and matter in controversy exceeds the sum or value of $75,000.

6. Venue of this action in this District is proper under 28 U.S.C. §1391 because B GREEN maintains its principal place of business in the this District and certain events or alleged omissions giving rise to this action occurred in this District, including the issuance of the subject Policy and the underlying Claim.

7. This is a declaratory judgment action pursuant to the Federal Declaratory Act, 28 U.S.C. §2201, for the purposes of determining an actual controversy between the parties as hereinafter more fully detailed below.

8. This action is currently ripe for adjudication, as an actual controversy exists between the parties.

## PARTIES

9. Plaintiff, KINSALE is a foreign eligible excess lines insurer, organized under the laws of the State of Arkansas, with its principal place of business at 2221 Edward Holland Drive, Richmond, Virginia 23230, that is authorized to do business in the State of New York and is doing business in the State of New York.

2

10. Upon information and belief, defendant B GREEN is a limited liability company organized under the laws of New York with its principal place of business at 36-44 13th Street, Long Island City, New York, 11106.

## FACTUAL BACKGROUND

### A. The Insurance

11. The KINSALE Policy, which bears identification no. 0100080711-0 provides Commercial General Liability ("CGL") insurance, on an occurrence basis, for the effective period of February 7, 2019 to February 7, 2020. (See **Exhibit "A"**).

12. Defendant B GREEN is the only Named Insured under the Policy, which was issued in the State of New York.

### 1. The Policy Application and Supplemental Policy Application

13. In seeking to induce KINSALE to issue the KINSALE Policy, B GREEN and/or its authorized agents and representatives, submitted a written application, entitled Commercial Insurance Application, dated January 31, 2019 (the "Application"). B GREEN also submitted a Contractors Supplemental Application ("Supplemental Application"). True copies of the Application with the Contractors Supplemental Application, are attached hereto as **Exhibit "B"**.

14. The Application was signed by Harry Pateroulakis, B GREENS' retail broker, and co-signed by John Solomos, the principal of B GREEN, and dated February 7, 2019. The Supplemental Application is also signed and dated February 7, 2019. The Supplemental Application was signed by John Solómos only, and dated February 7, 2019

15. As a part of the Application, B GREEN was directed to describe its operations, and the types of work as well as the percentage of work done in each of the different classifications.

16. In the Description of Primary Operations under the heading NATURE OF BUSINESS on page 2 of 4 of the Application, B GREEN stated that their primary operations were "Interior Renovations Contractors with Subs (plumbing and Electrical)."

17. In Paragraph 14 on page 3 of 4 in the Commercial General Liability Section of the Application, B GREEN was asked the following question: "14. Any structural Alteration Contemplated?"

18. B GREEN's response was an unqualified No.

19. In Paragraph 15 on page 3 of 4 in the Commercial General Liability Section of the Application, B GREEN was asked the following question: "15. Any demolition exposure contemplated?"

20. B GREEN's response was an unqualified No.

21. In Paragraph 1 on page 1 of 5 of the Supplemental Application, B GREEN was asked to state their percentage of its operations  as  a general contractor, a subcontractor, an owner/builder, and, a construction manager.

22. B GREEN assigned their percentage of operations from page 1 of the Supplemental Application as follows:

| OPERATIONS: | | | | |
|---|---|---|---|---|
| 1. Percentage of operations as: | General Contractor 10 % | Subcontractor 90 % | Owner/Builder % | Construction Manager % |

23. As can be seen from its' responses, B GREEN described its' percentage of operations as: 10% general contracting and 90% subcontracting.

24. No percentage of work done as an owner/builder or construction manager was listed in Section 1 of the Supplemental Application.

25. In Paragraph 9 on page 2 of 5 of the Supplemental Application, B GREEN was asked to list the percentage of types of work it would be performing in the next twelve months.

26. B GREEN stated in paragraph 9 of this section that they would be doing 100% of their work renovating office/retail, and 100% of their work renovating "Apartment – High Rise – Commercial grade construction – Concrete & steel".

27. In Paragraph 11 on page 2 of 5 of the Supplemental Application, B GREEN was asked the following question: "Does the applicant do any work over two (2) stories in height from grade (other than interior only)?"

28. B GREEN's answer was an unqualified No.

29. In Paragraph 12 on page 3 of 5 of the Supplemental Application, B GREEN was instructed to use the percentage of payroll and percentage of contract costs to indicate the percentage of construction work they would perform in the next twelve (12) months.

30. B GREEN stated that 100% of its direct operations were going to be carpentry and painting. It also stated that 100% of its subcontracted work was going to be electrical and plumbing work.

31. In Paragraph 22 on page 3 of 5 of the Supplemental Application, B GREEN was asked this question: "22. Will you be doing any demolition work other than remodeling?"

32. B GREEN's answer was an unqualified No.

5

33. In addition, on the final page of the Application, which bears the signature of Harry Pateroulakis and John Solomos as the principal of B GREEN under the heading "SIGNATURE," the Application provides in relevant part:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing and materially false information or conceals, for the purpose of misleading, information concerning any fact, material thereto commits a fraudulent insurance act, which is a crime and subjects that person to criminal and civil penalties ... (In New York, the civil penalty is not to exceed five thousand dollars ($5,000) and the stated value of the claim for each such violation).

34. Also, on the final age of the Supplemental Application, signed and dated February 7, 2019, under the heading "WARRANTY," the Supplemental Application provides in relevant part:

> The undersigned applicant warrants that the above statements and particulars together with any attached or appended documents are true and complete and do not misrepresent, misstate or omit any material facts.
>
> The Applicant agrees to notify us of any material changes in the answer to the questions on this application which may arise prior to the effective dates of any policy issued pursuant to this application and the applicant understands that any outstanding questions may be modified or withdrawn based such changes at our sole discretion.
>
> Notwithstanding any of the foregoing, the applicant understands that we are not obligated or under any duty to issue a policy of insurance based upon this information. The applicant further understands that, if a policy of insurance is issued, this application will be incorporated into and form a part of such policy.

35. John Solomos, the principal of B GREEN, as the applicant, expressly signed the Supplemental Application under the above terms of warranty.

36. Upon information and believe, at no time after the submission of the Application or the Supplemental Application, did B GREEN notify KINSALE of any material changes in these submissions before the KINSALE Policy was issued .

6

7732919v.1

37. The Application was intended to induce KINSALE into providing B GREEN with an insurance policy.

### 2. The Quote

38. In consideration of B GREEN's answers to the questions in the Application and Supplemental Application, KINSALE issued a quote to B GREEN (the "Quote"). A true and accurate copy of the Quote is annexed hereto as **Exhibit "C."**

39. The "Description of Operations:" section of the Quote read: "Interior Renovation Contractor-Interior Carpentry, Painting—Interior Work Only."

40. The Quote used the information provided by B GREEN in its Application and Supplemental Application to calculate what the premium charge would be, should B GREEN agree to an insurance contract with KINSALE.

41. In the Contingencies section of the Quote, KINSALE states that the Quote is subject to Kinsale's receipt and acceptance of the signed and dated Application and Supplemental Application.

42. The premiums quoted to B GREEN were based on the information B GREEN provided to KINSALE in the Application and Supplemental Application and that KINSALE relied on the representations of B GREEN in the Application and Supplemental Application as being truthful and accurate in the creation of the Quote.

### 3. The Policy

43. The parties agreed on the terms provided in the Quote, and KINSALE issued the KINSALE Policy to B GREEN.  (See **Exhibit "A"**).

44. The Policy premium, payable at inception was $64,488.

7732919v.1

45. The DESCRIPTION OF OPERATIONS on the cover page of the KINSALE Policy under the heading "DESCRIPTION OF BUSINESS" states as follows: "DESCRIPTION OF OPERATIONS: Interior Renovation Contractor—Interior Carpentry, Painting—Interior Work Only."

46. The Policy has a specific "CLASSIFICATION LIMITATION EXCLUSION," found on page 47 of 71, and 2 of 3 of the ADDITIONAL POLICY EXCLUSIONS section, which states that "[t]his insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this policy."

47. As stated above, the covered operations described in the DESCRIPTION OF OPERATIONS SECTION include only: "Interior Renovation Contractor—Interior Carpentry, Painting—Interior Work Only."

48. Any other operations being performed by B GREEN would therefore be excluded from coverage.

49. The Policy also has a DUTY TO DEFEND Exclusion, found on page 47 of 71, and 2 of 3 of the ADDITIONAL POLICY EXCLUSIONS section, which states "Where there is no coverage under the policy, there is no duty to defend."

### 3. The Construction Agreement

50. B GREEN entered into a contract (the "Agreement") with 104-22 Astoria Blvd Enterprises LLC ("Astoria Blvd. Enterprises") on May 1, 2017 to act as general contractor in connection with demolishing the existing structure at 104-22 Astoria Blvd, East Elmhurst, NY 11369 (the "Premises") and build a new building (the "Project"). A true and accurate copy of the Agreement is annexed hereto as **Exhibit "D."**

7732919v.1

51. On the first page of the Agreement, B GREEN is listed as "the Contractor".

52. Significantly, B GREEN is the only party named as contractor.

53. Article 9 of the Agreement covers the work of the general contractor, herein, B GREEN.

54. Section 9.2.2 of the Agreement states that, the contractor, B GREEN, "shall supervise and direct the Work..." It is clear that, under the terms of this section, B GREEN was to control and supervise the construction of the building contemplated by the Project.

55. New York City Department of Buildings records confirm that construction work on the Project was scheduled to start on June 20, 2017. True and accurate copies of the New York City Department of Building records annexed hereto as **Exhibit "E."**

56. The New York City Department of Building records show that the permit was issued to John Solomos, the principal of B GREEN.

57. The total number of dwelling units contemplated for the Project was listed as ten.

58. The NYC Department of Building Records, on the Work Permit on page 3 of 5 of **Exhibit "E"** states that the Description of Work at 104-22 Astoria Boulevard was "NEW BUILDING – HERBY FILING PROPOSED 5 STORY RESIDENTIAL BUILDING AND TEMPORARY FENCE AS SHOWN ON DRAWINGS FILED HEREWITH".

59. The Department of Building documents confirm that, under the Agreement, B GREEN contracted to act as the general contractor for the Project.

60. The Work Permit on page 3 of 5 of **Exhibit "E"** was issued on February 15, 2019 and expired on February 7, 2020.

7732919v.1

61. On page 4 of 5 of **Exhibit "E"** the NYC Department of Building Records confirm that the initial Work Permit filling date was June 20, 2017, and that the initial Work Permit was issued on June 20, 2017.

62. The work described on page 4 of 5 of **Exhibit "E"**, the initial Work Permit, is the same as above, specifically it states: "NEW BUILDING – HERBY FILING PROPOSED 5 STORY RESIDENTIAL BUILDING AND TEMPORARY FENCE AS SHOWN ON DRAWINGS FILED HEREWITH".

63. Furthermore, the Department of Building documents confirm that building contemplated by the Project was over five stories.

### 4.    *The Underlying Claim*

64. On or about April 8, 2019, Ana E. Collado, slipped and fell on the sidewalk in front of the Premises, where work on the Project was taking place. On information and belief, Ms. Collado, through her attorney, subsequently made a claim as against Astoria Blvd Enterprises, as the owner of the property ("Underlying Claim").

65. On information and belief, under the terms of the Agreement, B GREEN agreed to defend, indemnify and provide additional insured coverage to Astoria Blvd. Enterprises in connection with any claims arising from work on the Project.

66. Pursuant to those terms in the Agreement, Colony, the CGL insurer for Astoria Blvd. Enterprises, tendered the Underlying Claim to KINSALE, as B Green's CGL insurer, seeking defense, indemnification and additional insured coverage under the KINSALE Policy. A true and accurate copy of the letter from Colony is annexed hereto as **Exhibit "F."**

67. On May 29, 2019, KINSALE sent a letter to B Green concerning coverage for the Underlying Claim. A true and accurate copy of that letter is attached hereto as **Exhibit "G."**

68. The letter denied coverage and rejected Colony's tender on the ground that, at the time of the alleged accident at the Premises, B GREEN was not performing covered operations as set out in in the Description of Operations Section of the Policy.

69. The letter also denied coverage on the basis of the Classification Limitation Exclusion in the KINSALE Policy, which states as follows:

**Classification Limitation Exclusion**

> This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this Policy.

70. The letter also specifically denied any duty to defend in the Underlying Claim based on the DUTY TO DEFEND exclusion in the KINSALE Policy which states: "Where there is no coverage under this policy, there is no duty to defend."

71. The letter also expressly reserved KINSALE's right to assert or pursue any other policy defense, including but not limited to rescission of the Policy, which may be ascertained in the course of KINSALE'S investigation of the Underlying Claim.

72. On June 7, 2019 Kinsale sent a letter to Colony with a copy to B GREEN rejecting Colony's tender. A true and accurate copy of this letter is attached hereto as **Exhibit "H."**

73. The letter denied coverage and rejected Colony's tender on the ground that, at the time of the alleged accident at the Premises, B GREEN was not performing covered operations as set out in in the Description of Operations Section of the Policy.

11

74. The letter also denied coverage on the basis of the Classification Limitation Exclusion in the KINSALE Policy, which states as follows:

### Classification Limitation Exclusion

This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this Policy.

75. The letter also specifically denied any duty to defend in the Underlying Claim based on the DUTY TO DEFEND exclusion in the KINSALE Policy which states: "Where there is no coverage under this policy, there is no duty to defend."

76. The letter also expressly reserved KINSALE's right to assert or pursue any other policy defense, including but not limited to rescission of the Policy, which may be ascertained in the course of KINSALE'S investigation of the Underlying Claim.

## AS AND FOR A FIRST CAUSE OF ACTION
(Rescission of the Policy – Application-Operations--Section 14)

77. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "76" of this Complaint as if fully set forth herein.

78. Paragraph 14 on page 3 of 4 in the Commercial General Liability Section of the Application asked this question: "Any structural alteration contemplated?"

79. B GREEN's response was an unqualified No.

80. Had KINSALE known that B GREEN was acting as general contractor, supervising and directing structural alterations, in the form of demolishing the existing structure and constructing an entirely new building in its place, it would not have agreed to issue the KINSALE

12

Policy, or would not have issued the KINSALE Policy on the same terms and conditions, or for the same premium.

81. By not disclosing in its response to Paragraph 14 on page 3 of 4 in the Commercial General Liability Section of the Application, that it was acting as general contractor supervising and directing structural alterations undertaken in connection with the Project, B GREEN made a material omission and misrepresentation relied upon by KINSALE to its detriment.

82. If KINSALE had not been wrongfully induced to issue the Policy by reason of material omissions or misstatements in the Application and Supplemental Application, it would not be subject to the prospect of providing coverage for the Underlying Claim, including but not limited to the defense of the claim against B GREEN.

83. KINSALE advised B GREEN in its May 29, 2019 letter denying coverage for the Underlying Claim that it was reserving its right to rescind the Kinsale Policy. (**Exhibit "G"**).

84. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the Policy.

85. As KINSALE was wrongfully induced to issue the Policy by reason of material misrepresentations and omissions in the Application and Supplemental Application, it is entitled to a judgment to be entered, declaring the Kinsale Policy void *ab initio* and that B GREEN is only entitled to the return of the net sum of $64,488.

## AS AND FOR A SECOND CAUSE OF ACTION
(Rescission of the Policy – Application-Operations--Section 15)

86. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "85" of this Complaint as if fully set forth herein.

13

87. Paragraph 15 on page 3 of 4 in the Commercial General Liability Section of the Application asked this question: "Any demolition exposure contemplated?"

88. B GREEN's response was an unqualified No.

89. Had KINSALE known that, under the terms of the Agreement, B GREEN was acting as general contractor, supervising and directing demolition operations, in the form of demolishing the existing structure, it would not have agreed to issue the KINSALE Policy, or would not have issued the KINSALE Policy on the same terms and conditions, or for the same premium.

90. By not disclosing in its response to Paragraph 15 on page 3 of 4 in the Commercial General Liability Section of the Application that it was acting as general contractor, supervising and directing demolition work undertaken in connection with the Project, B GREEN made a material omission and misrepresentation relied upon by KINSALE to its detriment.

91. If KINSALE had not been wrongfully induced to issue the Policy by reason of material omissions and misstatements in the Application and Supplemental Application, it would not be subject to the prospect of providing coverage for the Underlying Claim, including but not limited to the defense of the claim against B GREEN.

92. KINSALE advised B GREEN in its May 29, 2019 letter disclaiming coverage for the Underlying Claim that it was reserving its right to rescind the KINSALE Policy. (**Exhibit "G"**).

93. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the Policy.

94. As KINSALE was wrongfully induced to issue the KINSALE Policy by reason of material misrepresentations and omissions in the Application and Supplemental Application, it is

entitled to a judgment to be entered, declaring the Policy void *ab initio* and that B GREEN is only entitled to the return of the net sum of $64,488.

## AS AND FOR A THIRD CAUSE OF ACTION

(Rescission of the Policy –Supplemental Application-Operations--Section 1)

95. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "94" of this Complaint as if fully set forth herein.

96. In Paragraph 1 on page 1 of 5 of the Supplemental Application, B GREEN was asked to state their percentage of operations as a general contractor, a subcontractor, an owner/builder, and, a construction manager

97. B GREEN described its percentage of operations as: 10% general contracting and 90% subcontracting.

98. Had KINSALE known that general contractor work accounted for more than 10% of B GREEN business operations, KINSALE would not have agreed to issue the KINSALE Policy, or would not have issued the KINSALE Policy on the same terms and conditions, or for the same premium.

99. By not disclosing in its response to question 1 in the OPERATIONS section of the Application, that general contractor work accounted for more than 10% of B GREEN'S operations, such as under the Agreement where B GREEN was acting as the general contractor for the Project, supervising and directing the demolishing of the existing structure and the constructing an entirely new building, B GREEN made a material omission and misrepresentation relied upon by KINSALE to its detriment.

7732919v.1

100. If KINSALE had not been wrongfully induced to issue the Policy by reason of material omissions and misstatements in the Application and Supplemental Application, it would not be subject to the prospect of providing coverage for the Underlying Claim, including but not limited to the defense of the claim against the defendant.

101. KINSALE advised B GREEN in its May 29, 2019 letter disclaiming coverage for the Underlying Claim that it was reserving its right to rescind the KINSALE Policy. (**Exhibit "G"**).

102. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the Policy.

103. As KINSALE was wrongfully induced to issue the KINSALE Policy by reason of material misrepresentations and omissions in the Application and Supplemental Application, it is entitled to a judgment to be entered, declaring the Policy void ab initio and that B GREEN is only entitled to the return of the net sum of $64,488.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Rescission of the Policy –Supplemental Application-Section 9)

104. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "103" of this Complaint as if fully set forth herein.

105. Under Section 9 of the Supplemental Application, B GREEN stated that it would be doing 100% of its work renovating office/retail, and 100% of its work renovating "Apartment – High Rise – Commercial grade construction – Concrete & steel".

106. As is shown in the Agreement, B GREEN contracted prior to submitting the Supplemental Application for the Policy, to act as the general contractor on the Project, pursuant

to which it was supervising and directing the demolishing of an existing structure and the constructing a new five story building.

107. Had KINSALE known that B GREEN was working as the general contractor for the Project, supervising and directing the demolition of an existing structure and the construction of a new five story building, it would not have agreed to issue the Policy, or would not have issued the Policy on the same terms and conditions, or for the same premium.

108. By not disclosing in its' response to Section 9 of the Supplemental Application, that it was engaging in general contractor work for new construction, such as under the Agreement where B GREEN was acting as the general contractor supervising and directing the demolition of an existing structure and the construction of an entirely new building, B GREEN made a material omission and misrepresentation relied upon by KINSALE to its detriment.

109. If KINSALE had not been wrongfully induced to issue the KINSALE Policy by reason of material omissions and misrepresentations in the Supplemental Application, it would not be subject to the prospect of providing coverage for the Underlying Claim, including but not limited to, the defense of the claim against B GREEN.

110. KINSALE advised B GREEN in its May 29, 2019 letter disclaiming coverage for the Underlying Claim that it was reserving its right to rescind the KINSALE Policy. **(Exhibit "G")**.

111. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the Policy.

112. As KINSALE was wrongfully induced to issue the KINSALE Policy by reason of material misrepresentations and omissions in the Supplemental Application, it is entitled to a

17

judgment to be entered, declaring the KINSALE Policy void *ab initio* and that B GREEN

is only entitled to the return of the net sum of $64,488.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Rescission of the Policy –Supplemental Application-Section 11)

113. KINSALE repeats, restates and reiterates each and every allegation set forth in

paragraphs "1" to and including "112" of this Complaint as if fully set forth herein.

114. Under Section 11 of the Supplemental Application, B GREEN stated that they would

not be working on any buildings over two stories in height.

115. As is shown in the Agreement, B GREEN contracted prior to their Application for the

KINSALE Policy, to act as general contractor on the Project, a role, which by its terms, entailed

supervising and directing the demolition of an existing structure and the construction of a new a

five story building.

116. Had KINSALE known that B GREEN was working as general contractor on the

Project, supervising and directing the construction of a building over two stories, it would not have

agreed to issue the KINSALE Policy, or would not have issued the KINSALE Policy on the same

terms and conditions, or for the same premium.

117. By not disclosing in its response to Section 11 of the Application, that it was acting as

the general contractor on the Project, supervising and directing the construction of a five story

building, B GREEN made a material omission and misrepresentation relied upon by KINSALE to

its detriment.

118. If KINSALE had not been wrongfully induced to issue the KINSALE Policy by reason

of material omissions and misrepresentations in the Supplemental Application, it would not be

7732919v.1

subject to the prospect of providing coverage for the Underlying Claim, including but not limited to, the defense of the claim against the defendant.

119. KINSALE advised B GREEN in its May 29, 2019 letter denying coverage for the Underlying Claim that it was reserving its right to rescind the Policy. (**Exhibit "G"**).

120. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the Policy.

121. As KINSALE was wrongfully induced to issue the KINSALE Policy by reason of material misrepresentations and omissions in the Supplemental Application, it is entitled to a judgment to be entered, declaring the KINSALE Policy void *ab initio* and that B GREEN is only entitled to the return of the net sum of $64,488.

## AS AND FOR A SIXTH OF ACTION
(Rescission of the Policy –Supplemental Application-Section 12)

122. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "121" of this Complaint as if fully set forth herein.

123. Under Section 12 of the Supplemental Application, B GREEN was instructed to use the percentage of payroll and percentage of contract costs to indicate the percentage of construction work they would perform in the next twelve (12) months.

124. In response to this question, B GREEN stated that 100% of its direct operations were going to be carpentry and painting. It also stated that 100% of its subcontracted work was going to be electrical and plumbing work.

125. As is shown in the Agreement, B GREEN contracted prior to their Application for the Policy, to act as general contractor for the Project, and, on information and belief, at the time of the accident was indeed working in that capacity.

126. Had KINSALE known that B GREEN was acting as general contractor on the Project, it would not have agreed to issue the KINSALE Policy, or would not have issued the KINSALE Policy on the same terms and conditions, or for the same premium.

127. By not disclosing in its response to Section 12 of the Supplemental Application that it was acting as the general contractor for the Project supervising and directing the demolition of an existing structure and the construction a new five story building, B GREEN made a material omission and misrepresentation relied upon by KINSALE to its detriment.

128. If KINSALE had not been wrongfully induced to issue the KINSALE Policy by reason of material omissions and misrepresentations in the Supplemental Application, it would not be subject to the prospect of providing coverage for the Underlying Claim, including but not limited to the defense of the claim against B GREEN.

129. KINSALE advised B GREEN in its May 29, 2019 letter denying coverage for the Underlying Claim, that it was reserving its rights to rescind the KINSALE Policy. (**Exhibit "G"**).

130. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the KINSALE Policy.

131. As KINSALE was wrongfully induced to issue the KINSALE Policy by reason of material misrepresentations and omissions in the Supplemental Application, it is entitled to a judgment to be entered, declaring the Policy void *ab initio* and that B GREEN is only entitled to the return of the net sum of $64,488.

7732919v.1

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Rescission of the Policy –Supplemental Application-Section 22)

132. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "131" of this Complaint as if fully set forth herein.

133. Under Section 22 of the Supplemental Application, B GREEN was asked "Will you be doing any demolition work other than remodeling?"

134. B GREEN's answer was an unqualified No.

135. Had KINSALE known that, under the terms of the Agreement, B GREEN was acting as general contractor for the Project, supervising and directing demolition work, in the form of demolishing an existing structure in preparation for constructing an entirely new building, it would not have agreed to issue the KINSALE Policy, or would not have issued the KINSALE Policy on the same terms and conditions, or for the same premium.

136. By not disclosing in its response to Section 22 of the Supplemental Application, that, under the terms of the Agreement, it was acting as general contractor for the Project, supervising and directing demolition work, in the form of demolishing an existing structure in preparation for constructing an entirely new building, B GREEN made a material omission and misrepresentation relied upon by KINSALE to its detriment.

137. If KINSALE had not been wrongfully induced to issue the KINSALE Policy by reason of material omissions in the Supplemental Application, it would not be subject to the prospect of providing coverage for the Underlying Claim, including but not limited to the defense of the claim against the defendant.

138. KINSALE advised B GREEN in its May 29, 2019 letter denying coverage for the Underlying Claim that it was reserving its rights to rescind the KINSALE Policy. (**Exhibit "G"**).

7732919v.1

139. By this Complaint, KINSALE hereby offers to return the premium of $64,488 paid by B GREEN for the KINSALE Policy.

140. As KINSALE was wrongfully induced to issue the KINSALE Policy by reason of material misrepresentations and omissions in the Supplemental Application, it is entitled to a judgment to be entered, declaring the Policy void *ab initio* and that B GREEN is only entitled to the return of the net sum of $64,488.

## AS AND FOR A EIGHTH CAUSE OF ACTION
(The Policy – Loss Outside the scope of the Insuring Agreement of the KINSALE Policy)

141. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "140" of this Complaint as if fully set forth herein.

142. The Kinsale Policy states, in relevant part, as follows:

Section 1—Coverages
Coverage A Bodily Injury and Property Damage Liability
1. Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies . . .

143. The insuring agreement of the KINSALE Policy applies only to liability arising from the covered operations set out in the DESCRIPTION OF OPERATIONS on the cover page of the Kinsale Policy under the heading "DESCRIPTION OF BUSINESS," which states as follows:

DESCRIPTION OF OPERATIONS: Interior Renovation Contractor—Interior Carpentry, Painting—Interior Work Only.

22

144. On information and belief, under the terms of the Agreement, B GREEN was acting as general contractor, supervising and directing the demolishing of an existing structure and the construction of an entirely new five-story building.

145. Demolition of an existing structure and construction of a new building are not operations included within the DESCRIPTION OF OPERATIONS in the KINSALE Policy.

146. Thus, at the time of the accident which is the subject of the Underlying Claim, B GREEN was not performing any of the covered operations set out in the DESCRIPTION OF OPERATIONS in the KINSALE Policy and the loss which is the subject of the Underlying Claim is outside the scope of the insuring agreement in the KINSALE Policy.

147. KINSALE is entitled to a judgment, to be entered, declaring that, because the insuring agreement only applies to the operations described in the DESCRIPTION OF OPERATIONS in the Policy Declarations, no coverage is afforded under the KINSALE Policy.

### AS AND FOR A NINTH CAUSE OF ACTION
(The Policy – Classification Limitation Exclusion)

148. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "147" of this Complaint as if fully set forth herein

149. The KINSALE Policy provides for the following exclusion from coverage:

CLASSIFICATION LIMITATION EXCLUSION

This insurance applies only to the operations that are described in the DESCRIPTION OF OPERATIONS shown on the Declarations page of this policy.

23

150. Under the terms of the Agreement, B GREEN was acting as general contractor for the Project, supervising and directing the demolishing of an existing structure and the construction of an entirely new five-story building.

151. Demolishing an existing structure and constructing a new building are not among the covered operations set out in the DESCRIPTION OF COVERED OPERATIONS section of the KINSALE Policy.

152. Thus, the loss which is the subject of the Underlying Claim is barred from coverage by the Classification Limitation Exclusion in the KINSALE Policy.

153. KINSALE is entitled to a judgment, to be entered, declaring that, because the insurance only applies to the operations described in the DESCRIPTIONS OF OPERATION in the Policy Declarations, no coverage is afforded under the KINSALE Policy.

## AS AND FOR A TENTH CAUSE OF ACTION
### (The Policy – DUTY TO DEFEND Exclusion)

154. KINSALE repeats, restates and reiterates each and every allegation set forth in paragraphs "1" to and including "153" of this Complaint as if fully set forth herein.

155. The KINSALE Policy provides for the following exclusion from coverage:

DUTY TO DEFEND EXCLUSION
Where there is no coverage under this policy, there is no duty to defend.

156. The loss which is the subject of the Underlying Claim arose from operations not included within the DESCRIPTION OF OPERATIONS in the KINSALE Policy.

157. The loss which is the subject of the Underlying Claim is also barred from coverage by the Classification Limitations Exclusion in the KINSALE Policy.

7732919v.1

158. KINSALE is entitled to a judgment, to be entered, declaring that, because there is no coverage under the terms of the KINSALE Policy, pursuant to the DUTY TO DEFEND EXCLUSION, KINSALE does not have a duty to Defend under the KINSALE Policy.

**WHEREFORE**, in light of the foregoing, Plaintiff KINSALE INSURANCE COMPANY respectfully submits that judgment should be entered as follows:

a. on the First Cause of Action, declaring that the Policy is void *ab initio*;

b. on the Second Cause of Action, declaring that the Policy is void *ab initio*;

c. on the Third Cause of Action, declaring that the Policy is void *ab initio*;

d. on the Fourth Cause of Action, declaring that the Policy is void *ab initio*;

e. on the Fifth Cause of Action, declaring that the Policy is void *ab initio*;

f. on the Sixth Cause of Action, declaring that the Policy is void *ab initio*;

g. on the Seventh Cause of Action, declaring that the Policy is void *ab initio*;

h. on the Eighth Cause of Action, declaring that Kinsale has no duty to defend or indemnify in the Underlying Claim because the loss for which coverage is being sought is outside the insuring agreement of the Kinsale Policy;

i. on the Ninth Cause of Action, declaring that Kinsale has no duty to defend or indemnify in the Underlying Claim because the loss for which coverage is sought is barred from coverage by the Classification Limitation Exclusion in the Kinsale Policy;

j. on the Tenth Cause of Action, declaring that Kinsale has no duty to defend the Underlying Claim because coverage is barred by the Duty to Defend Exclusion in the Kinsale Policy; and,

k. judgment against defendants for attorney fees and costs incurred in this action, together with such other further and necessary relief as this Court may deem just and necessary.

7732919v.1

Dated:    New York, New York
           June 10, 2019

Yours, etc.

WILSON ELSER MOSKOWITZ EDELMAN &
DICKER LLP

By:_____

Stephen Marcellino, Esq.
Carl J. Pernicone, Esq.
Saryah Sober, Esq.
Attorneys for Defendant
KINSALE INSURANCE COMPANY
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000
File No.: 11914.00100

TO:    John Solomos
      B GREEN CONSTRUCTION CORP
      36-44 13th Street
      Long Island City, New York 11106
      (718) 706-8500

26

7732919v.1